UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRELL T. EDWARDS,                           Case No. 15-11560

                    Plaintiff,                Thomas L. Ludington
v.                                            United States District Judge

COMMISSIONER OF SOCIAL SECURITY,              Stephanie Dawkins Davis
                                              United States Magistrate Judge
                    Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 16)**

**I.    PROCEDURAL HISTORY**

    A.    Proceedings in this Court

On April 30, 2015, plaintiff filed the instant suit seeking judicial review of
the Commissioner's decision disallowing benefits. (Dkt. 1). Pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L.
Ludington referred this matter to the undersigned for the purpose of reviewing the
Commissioner's decision denying plaintiff's claims. (Dkt. 3). This matter is
before the Court on cross-motions for summary judgment. (Dkt. 14, 16). The
cross-motions are now ready for report and recommendation.

    B.    Administrative Proceedings

On March 13, 2012, plaintiff filed a claim for supplemental security income,

alleging disability beginning January 1, 2010.  (Dkt. 11-2, Pg ID 39).  The

Commissioner initially denied plaintiff's disability application on June 14, 2012.

*Id*.  Thereafter, plaintiff requested an administrative hearing, and on November 19,

2013, he appeared with counsel before Administrative Law Judge ("ALJ") John J.

Rabaut, who considered his case *de novo*.  (Dkt. 11-2, Pg ID 53-83).  In a

December 23, 2013 decision, the ALJ determined that plaintiff was not disabled

within the meaning of the Social Security Act.  *Id*. at Pg ID 36-49.  The ALJ's

decision became the final decision of the Commissioner on February 26, 2015,

when the Social Security Administration's Appeals Council denied plaintiff's

request for review.  *Id*. at Pg ID 31-33.

       For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ's Findings

       Plaintiff was 30 years old on the date he filed for SSI benefits.  (Dkt. 11-2,

Pg ID 41).  Plaintiff, a resident of Taylor, Michigan, has a high school education

and past relevant work as a porter/maintenance worker, which is classified as

medium and unskilled.  *Id*.  Plaintiff testified that he had difficulty keeping a job

because he could not follow the required tasks, he is not social enough, could not

maintain an appropriate pace and could not follow directions.  (Dkt. 11-2, Pg ID

59-61).  The ALJ applied the five-step disability analysis to plaintiff's claims and

found at step one that plaintiff did not engage in any substantial gainful activity

since the application date.  *Id*. at 41.  At step two, the ALJ found that plaintiff had

the following severe impairments: major depressive disorder, organic mental

disorder, and alcohol abuse.  *Id*.  At step three, the ALJ found that plaintiff did not

have an impairment or combination of impairments that met or equaled one of the

listings in the regulations.  *Id*. at 42.  The ALJ determined the following as to

plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform a full range of work at all exertional levels but
> with the following nonexertional limitations: The
> claimant is limited to simple, routine, and repetitive
> tasks; performed in a work environment free of
> fast-paced production requirements; involving only
> simple, work-related decisions; and with few, if any,
> workplace changes. The claimant is limited to only
> occasional interaction with coworkers and the public.

*Id*. at 43.  At step four, the ALJ determined that plaintiff could perform his past

relevant work.  *Id*. at 47.  In the alternative, at step five, the ALJ concluded that

based on plaintiff's age, education, work experience and RFC, there were jobs that

existed in significant numbers in the national economy that plaintiff could have

performed and, therefore, he was not under a disability from the date of the application through the date of the decision. *Id*. at 48-49.

B.    Plaintiff's Claims of Error

Plaintiff asserts that he is disabled due to his Major Depressive Disorder and that he satisfies Listing 12.04, Affective Disorder. According to plaintiff, the criteria for Listing 12.04 is present and consistent with the findings of his treating psychiatrist and the State Agency psychologist in that plaintiff suffers with mood disturbances, depression, which causes plaintiff to have difficulties in concentration, and a documented history of chronic affective disorder of at least two years duration that has caused more than a minimal limitation to do basic work activities with symptoms attenuated by medication or psychosocial support with repeated episodes of decomposition. Plaintiff's psychiatrist frequently assessed his GAF as 50-52, which indicates serious to moderate limitations in functioning (Dkt. 11-7, Pg ID 253-306). Plaintiff contends that the ALJ improperly discounted these assessments when concluding that plaintiff was not disabled. Plaintiff asserts that had the ALJ utilized the GAF findings, plaintiff would have met the listing, or in the alternative at minimum equaled the listing criteria. *See White v. Comm'r of Soc. Sec.*, 572 F.3d. 272, 276 (6th Cir. 2009) (explaining the importance of GAF scores). Plaintiff also asserts that he remained under the care of his psychiatrist for less than a year because he lacked the funds

to secure medical treatment. According to plaintiff, while the ALJ commented on the lack of treatment, he disregarded plaintiff's financial situation.

Essentially, plaintiff contends that the ALJ failed to give the opinions of his treating psychiatrist greater weight than the opinions of the nonexamining source. According to plaintiff, the ALJ did not provide good reasons for discounting the opinions of plaintiff's treating physician and his conclusion was based solely on the fact that plaintiff's treating physician had not performed a functional capacity assessment and the nonexamining State Agency psychologist had performed the functional capacity assessment. Plaintiff says that his case should be remanded for further consideration or he should be awarded benefits in the present case, because he did not have medical insurance and could not continue his medical treatment. He should, therefore, be afforded the opportunity to provide current medical evidence of his disability.

C.   Commissioner's Response and Motion for Summary Judgment

In response, the Commissioner maintains that substantial evidence supports the ALJ's finding that plaintiff's impairments did not satisfy Listing 12.04. More specifically, the Commissioner points out that, to meet or equal Listing 12.04, plaintiff was required to provide (A) evidence of a depressive, manic, or bipolar syndrome characterized by certain criteria; and either (B) at least two of the following: marked restriction of activities of daily living; marked difficulties in

5

maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration; or (C) medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.04.  The Commissioner asserts that plaintiff has not presented evidence of all of these criteria and thus, substantial evidence supports the ALJ's finding that he did not meet this or any other listing.

Contrary to plaintiff's assertions, although Dr. Park diagnosed major depressive disorder, the Commissioner says that his treatment notes do not show that plaintiff satisfied the paragraph B or C criteria of Listing 12.04.  Specifically, Dr. Park's treatment notes do not show marked limitations in the paragraph B criteria.  Regarding activities of daily living, Dr. Park observed appropriate

appearance, grooming, and hygiene and noted that plaintiff was considering

returning to work or school.  (Dkt. 11-7, Pg ID 267, 279).  Regarding social

functioning, Dr. Park noted that Plaintiff was cooperative (Dkt. 11-7, Pg ID 267,

279), considering returning to work or school (Dkt. 11-7, Pg ID 267, 279), and

lived with his girlfriend (Dkt. 11-7, Pg ID 267, 265). Regarding concentration,

persistence, or pace, Dr. Park observed no psychosis, normal thought processes,

intact memory, fair to good judgment, and that Plaintiff could focus.  (Dkt. 11-7,

Pg ID 255, 267-268, 279-280).  And, according to the Commissioner, there is also

nothing in Dr. Park's treatment notes to suggest that Plaintiff experienced repeated

episodes of decompensation, defined in the regulations as exacerbations or

increases in symptoms lasting at least two weeks on an average of once every four

months.  20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.00(C)(4).

      As to the C criteria, Dr. Park could not provide medical documentation of a

chronic affective disorder for at least two years because he treated plaintiff for less

than one year, and plaintiff did not seek any other treatment after his last visit with

Dr. Park.  (Dkt. 11-7, Pg ID 253-306).  The Commissioner also points out that Dr.

Park also did not suggest that plaintiff met or equaled any listing or give an

opinion on plaintiff's functional limitations.  *Id*.  Notably, in June 2012, the State

agency psychologist, Dr. Blake, reviewed the record and opined that plaintiff's

impairments caused only moderate limitations and did not meet or equal Listing

12.04 – or any other listing.  (Dkt. 11-3, Pg ID 117).  The Commissioner maintains that Dr. Blake's opinion constitutes substantial evidence to support the ALJ's step three finding.  *See Brown v. Astrue*, 2009 WL 2993810, at *5 (E.D. Mich. Sept. 16, 2009) (finding substantial evidence supporting the finding that the plaintiff did not satisfy Listing 12.04 where the State agency physicians opined that he did not, and the plaintiff presented no opinions to the contrary); *see also Mitchell v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 563, 568 (6th Cir. 2009) (finding substantial evidence to support the ALJ's finding where the ALJ relied on the only expert opinion in the record, and the claimant did not provide any evidence to meet his burden on the issue); SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) (explaining that opinions of State agency psychologists may be entitled to the most weight when those opinions are based on review of the complete case record).

The Commissioner next asserts that the ALJ permissibly cited plaintiff's lack of treatment after April 2012 as one reason to find his allegations of disability less credible.  (Dkt. 11-2, Pg ID 46).  The Commissioner points out that plaintiff has not challenged the ALJ's credibility finding and has not shown that free or low-cost treatment was unavailable to him, as he must to justify his failure to pursue treatment.  *See* SSR 96-7p, 1996 WL 374186, at *7-8.

And, contrary to plaintiff's argument, the Commissioner asserts that Dr. Park's assessment of GAF scores of 50 and 52 does not undermine the finding that

his impairments did not meet or equal a listing.  As the ALJ stated (Dkt. 11-2, Pg ID 46), the Commissioner has specifically explained that "[t]he GAF scale does not have a direct correlation to the severity requirements in [the] mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50465-65 (Aug. 21, 2000).  The Sixth Circuit and this Court have repeatedly cited this reasoning.  *See e.g.*, *Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007); *DeBoard v. Comm'r of Soc. Sec.*, 211 F. Appx. 411, 415 (6th Cir. 2006); *French v. Comm'r of Soc. Sec.*, 2016 WL 3951419, at *11 (E.D. Mich. June 30, 2016), *rep. & rec. adopted*, 2016 WL 3924111 (E.D. Mich. July 21, 2016); *Rose v. Comm'r of Soc. Sec.*, 2013 WL 3068692, at *7 (E.D. Mich. June 18, 2013).  The Commissioner also points out that this Court has specifically rejected the argument that a GAF score around or even below 50 undermines a step three finding that is otherwise supported by substantial evidence.  *See Rose*, 2013 WL 3068692, at *7 (rejecting the argument that a GAF score of 45 undermined the finding that the plaintiff did not meet or equal a listing); *Brown*, 2009 WL 2993810, at *5 (rejecting the argument that a GAF score between 41 and 50 undermined the finding that the plaintiff did not satisfy Listing 12.04).

In this vein, the Commissioner also urges the Court to reject plaintiff's argument that the ALJ should have given the GAF scores controlling weight since

they were assessed by a treating physician because "courts in this district do not

accord controlling weight to GAF scores." *Bryce v. Comm'r of Soc. Sec.*, 2014 WL

1328277, at *9 (E.D. Mich. Mar. 28, 2014). The Commissioner also asserts that

the ALJ properly and expressly assessed the GAF scores by plaintiff's treating

physician. The ALJ noted that Dr. Park frequently assessed GAF scores of 50-52,

but gave these scores little weight because: (1) GAF scores do not describe

specific work-related limitations or objective mental abnormalities; (2) the GAF

scale considers psychological, social, and occupational functioning whereas the

disability analysis primarily concerns occupational functioning; (3) if symptom

severity and functioning are discordant, the GAF score reflects the lower of the

two; and (4) a GAF score reflects an individual clinician's judgment and can vary

considerably between practitioners. (Dkt. 11-2, Pg ID 46-47). According to the

Commissioner, these were proper reasons for giving little weight to the GAF

scores. *See Hiltunen v. Colvin*, 2015 WL 5472287, at *3 (E.D. Mich. Sept. 17,

2015) (upholding an ALJ's decision to give little weight to GAF scores that did

not indicate whether they were intended to assess symptom severity or limitations

in functioning); *Bryce*, 2014 WL 1328277, at *10 (noting that "a GAF score, by

itself, carries little weight" and finding that the ALJ gave good reasons for not

assigning greater weight to GAF scores where she noted that the scores were not

indicative of any specific functional abilities or limitations). The Commissioner

also says that plaintiff's citation to *White v. Commissioner* does not show

otherwise.  In *White*, the Sixth Circuit described a GAF score as "a subjective

determination that represents the clinician's judgment of the individual's overall

level of functioning" and defined the various ranges of the GAF scale. *White v.*

*Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (quoting *Edwards v.*

*Barnhart*, 383 F. Supp. 2d 920, 924 n.1 (E.D. Mich. 2005)).  However, according

to the Commissioner, the court did not require that any particular consideration or

weight be given to a GAF score.  *Id*. at 276, 284-85.  Thus, the ALJ's decision to

give little weight to the GAF scores because they represent an individual

clinician's subjective judgment is consistent with the discussion in *White*.

## III.   DISCUSSION

### A.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

13

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis

Plaintiff claims that the ALJ erred in failing to find that his impairments meet or medically equal Listings 12.04 (Affective Disorder). At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or equal any of the relevant listing requirements of

14

20 C.F.R. Part 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(a).  An impairment that meets only some of the medical criteria and not all does not qualify, despite its severity.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled, and entitled to benefits.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Berry v. Comm'r of Soc. Sec.*, 34 Fed. Appx. 202, 203 (6th Cir. 2002).  The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  An impairment or combination of impairments is considered medically equivalent to a listed impairment ". . . if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *See Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 245 (6th Cir. 1986) (per curiam).

In order to meet Listing 12.04, plaintiff must show that he satisfies the criteria in both Paragraphs A and B of the listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04.  The A criteria consist of clinical findings which medically substantiate a mental disorder.  To satisfy the B requirements of Listings 12.04, plaintiff must establish at least two of the following limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social

functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id*. Alternatively, under Listing 12.04, a claimant may satisfy the requirements of a listed mental impairment if he has a medically substantiated mental impairment and functional limitations that meet the "C" criteria of the listing. The "C" criteria for Listing 12.04 requires a medically documented history of a mental impairment and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

As explained above, plaintiff has the burden at Step Three of the sequential analysis of putting forth evidence establishing that he meets or equals a listing. It is therefore incumbent on plaintiff to present medical evidence establishing that he meets all of the requirements of Listings 12.04 to meet his burden. *See Sullivan*, 493 U.S. at 530-32. However, the undersigned concludes that plaintiff has failed to identify any medical evidence supporting a finding that he meets the criteria of Listing 12.04. The only evidence plaintiff points to are the GAF scores assigned

by his treating physician, Dr. Parks.  Plaintiff contends that if the ALJ had

accepted those GAF scores and given them controlling weight, he would have

found that plaintiff met the Listing.  Yet, plaintiff cites no authority for this

proposition and overstates the significance of GAF scores.

"Global Assessment of Functioning represents the examiner's judgment of

the individual's overall level of psychological functioning."  *Doud v. Comm'r of*

*Soc. Sec.*, 314 F.Supp.2d 671, 674 n. 2 (E.D. Mich. 2003) (quoting American

Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th

ed. 2000)).  The GAF score is a subjective determination that represents the

clinician's judgment of the individual's overall level of functioning.  It ranges

from 100 (superior functioning) to 1 (persistent danger of severely hurting self or

others, persistent inability to maintain minimal personal hygiene, or serious

suicidal act with clear expectation of death).  A GAF rating of 51 to 60 signals the

existence of moderate difficulty in social or occupational functioning.  *White v.*

*Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).  "A GAF score may help

an ALJ assess mental RFC, but it is not raw medical data.  Rather, it allows a

mental health professional to turn medical signs and symptoms into a general

assessment, understandable by a lay person, of an individual's mental

functioning."  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 502 n.7 (6th

Cir. 2006).  Moreover, GAF assessments are "isolated to a relatively brief period

17

of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis." *White v. Colvin*, 2014 WL 2813310, at *10 (S.D. Ohio, June 23, 2014 ) (adopted by 2014 WL 3510298 (S.D. Ohio July 14, 2014)).

Contrary to plaintiff's suggestion, courts in this district do not accord controlling weight to GAF scores. *Bryce v. Comm'r of Soc. Sec.*, 2014 WL 1328277 *9 (E.D. Mich. 2014). In fact, the Sixth Circuit has held that even an ALJ's failure to refer to a GAF score does not make his or her RFC analysis unreliable. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (noting that a GAF score is a subjective determination); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. 2006) (concluding that low GAF scores failed to show that the ALJ's decision was not supported by substantial evidence, because, in part, the court was not "aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place"). Here, as the Commissioner points out, the ALJ expressly and carefully considered plaintiff's GAF scores and set forth specific reasons why they were not given

controlling weight. (Dkt. 11-2, Pg ID 45-46). Even if the ALJ had given the GAF

scores controlling weight, plaintiff does not explain how those scores or the

medical evidence in this record show that he satisfied each and every aspect of

Listing 12.04.

In contrast to plaintiff's unsupported argument, the ALJ's analysis of the B

and C criteria was thorough and complete, as described above by the

Commissioner. (Dkt. 11-2, Pg ID 42-43). The ALJ explained that there was no

evidence in the record establishing that plaintiff had at least two marked

limitations or one marked limitation and repeated episodes of decompensation, of

extended duration.[1] Notably, plaintiff offers no argument or evidence explaining

how he satisfied these criteria, as is his burden. In addition, the ALJ explained

that plaintiff did not meet the C criteria because he did not have a medically

documented history of his disorder of at least two years *and* there was no evidence

of repeated episodes of decompensation, a residual disease that has resulted in

such marginal adjustment that even minimal increase in mental demands or change

in the environment would be predicted to cause the individual to decompensate; or

a current history of one or more years' inability to function outside a highly

---

[1] The term "marked" is defined in the regulations as "more than moderate but less than extreme." (20 C.F.R. Part 404, Subpt. P, App. 1). The regulations go on to provide that "[a] marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

supportive living arrangement with a need for such an arrangement to continue. *Id*. Again, plaintiff makes no effort to explain or point to evidence suggesting that he satisfied any of these criteria.

In this vein, plaintiff complains that the ALJ concluded that he did not meet the two years of treatment requirement found in the C criteria, but did not consider his inability to maintain treatment due to a lack of insurance and funds. However, even if the Court assumes that the ALJ erred in this regard, plaintiff fails to explain how he satisfied the other C criteria, which must include evidence of one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue. Again, plaintiff has offered no such evidence and thus, any error committed by the ALJ in this regard is entirely harmless.

In the view of the undersigned, there is no basis in this record to disturb the findings of the ALJ. Thus, the undersigned concludes that the findings of the ALJ fall within the reasonable "zone of choice" and are therefore supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

21

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: January 31, 2017                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on January 31, 2017, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov